**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER
Nevada Bar No. 7332
8363 West Sunset Road, Suite 200
Las Vegas, NV 89113
Telephone: 702-550-4440
Facsimile: 844-670-6009
Email:   mfeder@dickinsonwright.com

**DICKINSON WRIGHT PLLC**
MARTIN D. HOLMES (*Pro Hac Vice to be submitted*)
Tennessee Bar No. 012122
PETER F. KLETT (*Pro Hac Vice to be submitted*)
Tennessee Bar No. 012688
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone: 615-244-6538
Facsimile: 844-670-6009
Email: mdholmes@dickinson-wright.com
Email: pklett@dickinson-wright.com
*Attorneys for Plaintiff and Putative Collective Class Members*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ALBERTO DELARA, on behalf of himself and others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC.,<br><br>  Defendant. | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT** |

**COLLECTIVE ACTION COMPLAINT**

**I.   OVERVIEW**

1.   Plaintiff ALBERTO DELARA ("Plaintiff" or "Representative Plaintiff") brings this collective action complaint against Defendant for violations of the Fair Labor Standards Act ("FLSA"), on behalf of himself and all other similarly situated employees, consisting of two (2) separate FLSA Collective Action Classes: (1) the "Concierge Class," consisting of all current and

1

former Concierges who worked for Defendant at any time since December 28, 2015 (hereinafter referred to as the "Recovery Period"); and (2) the "Marketing Supervisor Class," consisting of all current and former Marketing Supervisors who worked for Defendant at any time during the Recovery Period.

2. During Plaintiff's employment with Defendant, including part of the Recovery Period, Plaintiff worked as a non-exempt, commission-paid Concierge, receiving an advance at the hourly rate of $8.05 an hour. For hours worked in excess of forty (40) in a workweek, Plaintiff was paid overtime at the hourly rate of $12.07, which was one and one-half times Plaintiff's hourly rate.

3. During the Recovery Period as a Concierge, Plaintiff worked more than forty (40) hours per week on occasion. For example, according to Defendant's pay records attached as **Exhibit 1**, during the pay period between January 31, 2016 and February 13, 2016, Plaintiff worked 84.5 hours, which included 4.5 hours of overtime. Further, according to Defendant's pay records attached as **Exhibit 2**, during the pay period between June 5, 2016 and June 18, 2016, Plaintiff worked 83.01 hours, which included 3.01 hours of overtime.

4. During Plaintiff's employment as a Concierge with Defendant, including the Recovery Period, Plaintiff and other Concierges were denied proper compensation for all hours worked, including overtime pay at time and one-half their regular rates of pay (*i.e.* total compensation) for all hours worked in excess of forty (40) hours in a workweek. Instead of paying overtime based on the total weekly compensation of Plaintiff and other Concierges, Defendants paid overtime based on one and one-half times their hourly advance (typically minimum wage in the state where Plaintiff and Concierges worked). For example, Defendant paid Plaintiff an advance at the rate of $8.05 an hour (Florida minimum wage), and for hours worked in excess of forty (40) in a workweek, Defendant paid Plaintiff overtime at the rate of $12.07 an hour.

5. Concierges did not meet the legal criteria for any exemption of the FLSA. Thus, Defendant was legally required to pay Plaintiff and Concierges for all hours worked, including overtime pay at time and one-half their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

1  6. During Plaintiff's employment with Defendant, including part of the Recovery Period, Plaintiff was classified as a non-salaried Marketing Supervisor and was paid at an hourly rate, plus commissions and bonuses. For hours worked in excess of forty (40) in a workweek, Plaintiff was paid overtime at a rate of one and one-half times Plaintiff's hourly rate.

7. As a Marketing Supervisor, Plaintiff regularly and routinely worked more than 40 hours in a typical workweek, and frequently fifty (50) or more hours per week. For example, according to Defendant's records attached as **Exhibit 3**, during the pay period between May 7, 2017 and May 20, 2017, Plaintiff worked at 100.08 hours, which included 20.08 hours of overtime. According to Defendant's pay records attached as **Exhibit 4**, during the pay period between June 4, 2017 and June 17, 2017, Plaintiff worked 103.68 hours, which included 23.68 hours of overtime.

8. During Plaintiff's employment as a Marketing Supervisor with Defendant, including the Recovery Period, Plaintiff and other Marketing Supervisors were denied proper compensation for all hours worked, including overtime pay at time and one-half their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

9. Although titled "Marketing Supervisors" by Defendant, Plaintiff and other Marketing Supervisors did not meet the legal criteria to qualify as exempt under any exemption of the FLSA, including but not limited to the fact that Plaintiff and other Marketing Supervisors were not paid on a salary basis. Instead, Plaintiffs and other Marketing Supervisors were paid on an hourly basis.

10. Instead of calculating and paying overtime based on the total weekly compensation of Plaintiff and other Marketing Supervisors (*i.e.* hourly pay, commissions and bonuses earned in a given workweek), Defendants paid overtime based on one and one-half times their hourly rate only, thereby depriving Plaintiff and other Marketing Supervisors of additional overtime pay owed to them.

11. Defendant's failure to pay lawful overtime pay to Plaintiff and all members of the Concierge and Marketing Supervisor Classes by excluding all commissions, bonuses and other compensation earned in any given workweek when calculating the regular rate of pay, constitutes a regular, recurring and willful violation of the FLSA.

/ / /

3

12. Pursuant to 29 U.S.C. § 206(a)(1), § 207(a) and § 216(b), Defendant is liable to Plaintiff, Concierges and Marketing Supervisors for unpaid wages, including unpaid overtime compensation, plus an additional equal amount as liquidated damages, as well as attorney's fees and costs.

13. Plaintiff and other Concierges are similarly situated under the FLSA, 29 U.S.C. § 216(b), as they commonly suffered wage losses under Defendant's uniform and illegal payroll policies, practices and procedures as alleged herein.

14. Plaintiff and other Marketing Supervisors are similarly situated under the FLSA, 29 U.S.C. § 216(b), as they commonly suffered wage losses under Defendant's uniform and illegal payroll policies, practices, and procedures as alleged herein.

## II.   JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the collective actions brought for violations of the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 & § 1343.

16. This Court has personal jurisdiction over the collective actions brought pursuant to Rule 4 of the Federal Rules of Civil Procedure.

17. Venue is proper in the District of Nevada under 28 U.S.C. § 1391 because Defendant's principal place of business is in this District and a substantial portion of the events forming the basis of the suit, including the decision to not properly pay overtime to Defendant's Concierges and Marketing Supervisors occurred in this District.

## III. PARTIES

18. Plaintiff Alberto DeLara is a resident and citizen of Florida. Plaintiff's Consent Form to join this lawsuit is attached as **Exhibit 5**. During the Recovery Period as defined above, Plaintiff worked as a Concierge and Marketing Supervisor for Defendant at several of Defendant's resorts in Florida.

19. Defendant Diamond Resorts International Marketing, Inc. ("DRIMI") is a California corporation with its principal place of business located at 10600 W. Charleston Blvd., Las Vegas, Nevada 89135. DRIMI's registered agent for service in Nevada is National Registered Agents, Inc. of Nevada, 701 S. Carson Street, Suite 200, Carson City, Nevada.

4

## IV.   DEFENDANT'S BUSINESS OPERATIONS

20. Defendant operates under the trade name Diamond Resorts. Defendant owns and/or manages over 100 ownership resorts.

21. Defendant sells ownership interests in its resort properties to the general public.

22. At many of Defendant's resorts, including those in Florida and Nevada, Defendant has sales offices on site which Defendant uses to market and sell ownership interests in Defendant's resort properties. Defendant uses a similar business model for marketing and sales, consisting of Concierges who work on site to market Defendant's ownership interests and to solicit prospective owners and current owners to visit Defendant's sales offices, where they are met by Defendant's sales representatives who attempt to obtain purchases of ownership interests in Diamond resort properties.

23. In addition, Defendant's on-site marketing and sales offices share common management and/or a common management structure, including but not limited to Marketing Supervisors, and utilize the same uniform policies, practices, and procedures for conducting marketing and sales operations, as well as timekeeping, compensation, and payroll for Concierges and Marketing Supervisors.

24. Defendant also utilizes an upper management structure at the levels above the on-site Marketing Supervisors, consisting of regional Marketing Supervisors, as well as marketing management at Defendant's corporate offices in Las Vegas, Nevada.

25. Upper level management decisions, including those related to the policies, practices, and procedures for conducting marketing and sales operations, timekeeping, compensation, and payroll, are made at the corporate level in Las Vegas, Nevada, throughout the Recovery Period defined above.

26. At all relevant times, including throughout the Recovery Period, Defendant employed and continues to employ Concierges and Marketing Supervisors at their on-site offices to help market ownership interests in Defendant's properties.

/ / /

/ / /

5

27. During the Recovery Period, Concierges were paid on a commission basis with an hourly minimum wage advance (typically the minimum wage rate in the state where the Concierge worked) that was recouped or recoverable from earned commissions.

28. During the Recovery Period, Concierges were not paid overtime based on their regular rate of pay (*i.e.* all earnings, including commissions and bonuses); but instead were paid overtime based on one and one half times their hourly advance.

29. During the Recovery Period, Marketing Supervisors were paid on an hourly rate plus commission/bonus basis. During the Recovery Period, Marketing Supervisors were not paid overtime based on their regular rate of pay (*i.e.* all earnings, including commissions and bonuses); but instead were paid overtime based on one and one half times their hourly rate.

30. During the Recovery Period, Defendant classified all Marketing Supervisors as non-exempt, overtime eligible employees who were entitled to receive overtime pay in workweeks in which they worked more than forty (40) hours in a workweek.

31. During the Recovery Period, Plaintiff was employed as a Concierge until approximately August 13, 2016. Plaintiff was employed as a Marketing Supervisor from approximately August 14, 2016, to November 29, 2018.

32. While Plaintiff worked as a Concierge, he was paid an advance of $8.05 an hour, the Florida minimum wage at the time. If Plaintiff worked overtime, he was paid one and one half times the $8.05, which equaled $12.076 per hour.

33. As a Concierge, Plaintiff was not paid all overtime due and owing to him. For example, according to Plaintiff's pay record for the pay period ending August 13, 2016, Plaintiff had been paid $172.22 year to date for overtime. **See Exhibit 6**. Based on this pay record, according to Defendant, Plaintiff had worked 14.26 hours of overtime, which when multiplied by one and one half times Plaintiff's hourly rate of pay of $8.05 an hour, equated to an overtime rate of $12.076, which when multiplied by 14.26 hours, equaled $172.22. Plaintiff, however, had earned $39,007.91 in commissions year to date as of August 13, 2016, which was not used in calculating the overtime payable to Plaintiff.

///

34. In the pay periods during the Recovery Period that Plaintiff worked as a Marketing Supervisor, and he was initially paid at an hourly rate of $11.35 per hour plus commissions and bonuses, which later increased to $12.01 an hour plus commissions and bonuses. When Plaintiff worked overtime, he was paid at an overtime rate equaling one and one half times his hourly rate, but Defendant excluded Plaintiffs' commissions, bonuses and other earnings from the computation of Plaintiff's regular rate of pay when calculating overtime pay owed to Plaintiff.

35. For example, Plaintiff's pay records for the pay period ending December 17, 2016 are attached as **Exhibit 7**. According to Plaintiff's pay records, for the pay period from December 4, 2016, to December 17, 2016, Plaintiff worked at least 20.78 hours of overtime. At the hourly rate of $18.0154 (one and one half times Plaintiff's hourly rate of $12.01), Plaintiff was paid $374.36 in overtime (20.78 hours times $18.0154). Plaintiff, however, had earned additional compensation in the form of commissions and bonuses which Defendant excluded when calculating Plaintiff's regular rate of pay for determining overtime pay owed to Plaintiff.

36. The aforementioned examples demonstrating the manner in which Plaintiff was compensated, including the improper and illegal calculation of overtime pay, were and are consistent with Defendant's policies, practices and procedures of compensating other Concierges and Marketing Supervisors throughout the Recovery Period.

### V. COVERAGE UNDER THE FLSA

37. During the Recovery Period, Defendant was and/or is an employer of Plaintiff, Concierges and Marketing Supervisors within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d).

38. During the Recovery Period, Defendant has constituted an enterprise within the meaning of § 3(r) of the FLSA, 29 U.S.C. § 203(r).

39. During the Recovery Period, Plaintiff, Concierges and Marketing Supervisors are or were employees within the meaning of § 3(e)(1) of the FLSA. 29 U.S.C. § 203(e)(1).

40. During the Recovery Period, the minimum wage and overtime provisions set forth in § 6 and § 7, respectively, of the FLSA applied to Defendant, and to each of Defendant's Concierges and Marketing Supervisors.

41.  The job duties performed by Plaintiff as a Concierge and Marketing Supervisor during his employment with Defendant were substantially similar to those performed by other Concierges and Marketing Supervisors during their employment with Defendants, including during the FLSA Recovery Period as defined above.

### VI.  FLSA COLLECTIVE ACTION ALLEGATIONS

42.  Plaintiff reasserts and re-alleges the allegations set forth above.

43.  Plaintiff brings this FLSA collective action on behalf of himself and all other persons similarly situated pursuant to § 16(b) of the FLSA (codified at 29 U.S.C. § 216(b)), which provides, in pertinent part, as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

44.  The Concierge Class and Marketing Supervisor Class consist of all current and former Concierges and Marketing Supervisors who worked for Defendant at any time since December 28, 2015.

45.  Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  None of the FLSA exemptions from overtime pay apply to Plaintiff, Concierges or Marketing Supervisors while working for Defendant at any time since December 28, 2015.

46.  The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees for all hours worked, including overtime pay for work performed in excess of forty (40) hours per in a workweek at their regular rate of pay.

47.  Throughout the Recovery Period, Plaintiff, Concierges and Marketing Supervisors were entitled to receive overtime when they worked more than forty (40) hours in a workweek based on their regular rate of pay, which included not only their hourly rate, but also commissions, bonuses and other compensation they earned for the workweek.

/ / /

/ / /

8

48. Plaintiff, Concierges and Marketing Supervisors are and were victims of Defendant's widespread, repeated, systematic, illegal and uniform compensation policies, practices and/or procedures designed to evade the overtime requirements of the FLSA.

49. Defendant willfully engaged in a pattern of violating the FLSA throughout the Recovery Period by knowingly failing to pay overtime to Concierges and Marketing Supervisors for all hours worked in excess of forty (40) in a workweek and/or failing to pay overtime at the proper regular rate based on their total compensation earned for the workweek.

50. Defendant's conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255.

51. Defendant is liable under the FLSA for failing to properly compensate Plaintiff, Concierges and Marketing Supervisors for the overtime hours they worked during the Recovery Period.  Plaintiff is substantially similar to other Concierges and Marketing Supervisors, and, as such, notice should be sent to current and former Concierges and Marketing Supervisors who worked for Defendant during the Recovery Period. There are numerous similarly situated current and former Concierges and Marketing Supervisors of Defendant who have suffered from Defendant's common and uniform policies, practices and/or procedures of not paying Concierges and Marketing Supervisors, including Plaintiff, overtime pay for all hours worked above forty (40) in a workweek and/or not paying overtime at the Concierges' and Marketing Supervisors' lawful regular rate of pay which is calculated based on their total compensation for the workweek. These similarly situated current and former Concierges and Marketing Supervisors would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in this action. Those similarly situated employees are known to Defendant, and are readily identifiable through Defendant's records.

52. Plaintiff, Concierges and Marketing Supervisors are entitled to damages equal to the overtime pay for all hours worked above forty (40) in a workweek calculated at their proper regular rate of pay based on their total earnings for a given workweek as mandated by the FLSA within the three (3) years preceding the filing of the Complaint, because Defendant acted willfully and knew, or showed reckless disregard for whether, its conduct was prohibited by the FLSA.

53. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA as alleged in the preceding paragraphs. As a result thereof, Plaintiff, Concierges and Marketing Supervisors are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation, as permitted by § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendant acted in good faith and with reasonable grounds to believe it was complying with the FLSA, Plaintiff, Concierges, and Marketing Supervisors are entitled to an award of prejudgment interest at the applicable legal rate of pay.

54. As a result of the aforementioned violations of the FLSA, overtime compensation has been unlawfully withheld by Defendant from Plaintiff, Concierges and Marketing Supervisors. Accordingly, Defendant is liable under § 16(b) of the FLSA (codified at 29 U.S.C. § 216(b)), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorney's fees, and costs of this action.

## VII.   PRAYER FOR RELIEF

1. Wherefore, Plaintiff, on behalf of himself and all other similarly situated Concierges and Marketing Supervisors, respectfully request that this Court grant the following relief:

   a. An order conditionally certifying this as a collective action on behalf of two Classes, the Concierge Class and the Marketing Supervisor Class, with prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective Action Classes, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents to join this lawsuit pursuant to 29 U.S.C. § 216(b);

   b. An order designating Plaintiff as representative of the Concierge and Marketing Supervisor Classes;

   c. An order designating Dickinson Wright PLLC as counsel for the Concierge and Marketing Supervisor Classes;

///

1        d.     An award of unpaid wages, including all overtime compensation, due under the FLSA;

       e.     An award of liquidated damages as a result of the Defendant's failure to exercise good faith in failing to pay lawful overtime compensation pursuant to 29 U.S.C. § 216;

       f.     An award of prejudgment and post-judgment interest;

       g.     An award of costs and expenses of this action, together with reasonable attorney's fees pursuant to FLSA; and

       h.     Such other and further relief as this Court deems just and proper.

DATED this 3rd day of January 2019.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

By: */s/ Michael N. Feder*
Michael N. Feder (NV Bar No. 7332)
8363 West Sunset Road Suite 200
Las Vegas, NV 89113
Telephone: 702-550-4440
Facsimile: 844-670-6009
Email: mfeder@dickinson-wright.com

Martin D. Holmes (TN Bar No. 012122)
Peter F. Klett (TN Bar No. 012688)
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone: 615-244-6538
Facsimile: 844-670-6009
Email: mdholmes@dickinson-wright.com
Email: pklett@dickinson-wright.com

*Attorneys for Plaintiffs, Putative Collective Class Members*