**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALBERTO DELARA, | Case No.: 2:19-cv-00022-APG-NJK |
| Plaintiff | **Order (1) Granting in Part Motion to Certify, (2) Denying Motion to Strike as Moot, and (3) Granting Motion for Leave to File Supplemental Authority** |
| v. | |
| DIAMOND RESORTS INTERNATIONAL MARKETING, INC., | [ECF Nos. 31, 50, 53] |
| Defendant | |

Plaintiff Alberto Delara used to work for defendant Diamond Resorts International Marketing Inc. (Diamond) as a concierge and a marketing supervisor. He sues Diamond for unpaid overtime wages, contending that although Diamond paid him overtime, it incorrectly calculated the amount because it did not include all components of his regular pay. Delara sues under the Fair Labor Standards Act (FLSA) on behalf of himself and as a proposed collective action for all other similarly situated Diamond concierges and marketing supervisors nationwide.

Delara moves for conditional certification of the collective action and for notice to be sent to potential collective action members. He contends Diamond applied the same pay policies to all of its concierges and marketing supervisors nationwide, so allowing the case to proceed on a collective basis nationwide is appropriate. He also proposes forms of notices and the procedures to circulate the notices. Finally, he requests that I toll the limitation period from the date the complaint was filed through the close of the period during which the putative collective action members may join this action.

////

1    Diamond opposes certification, arguing Delara has not met his burden of showing that

2 Diamond's pay policies were uniform nationwide because he relies on his own experience at

3 only a few resorts in Florida.  Alternatively, Diamond contends the notices should not be sent to

4 any putative collective action members who either signed arbitration agreements containing class

5 action waivers or who have already settled their claims through litigation in California.

6 Diamond also challenges the contents of Delara's proposed notices and related procedures and

7 contends there is no basis to toll the limitation period.

8    I grant Delara's motion in part.  I conditionally certify the collective action.  But I direct

9 Delara to amend his proposed notices to conform with the rulings in this order.

10 **I.  PRELIMINARY CERTIFICATION**

11    Delara seeks preliminary certification of an FLSA collective action so he can provide the

12 putative opt-in plaintiffs with notice of the pendency of the action.  He proposes two putative

13 "classes," one for concierges and the other for marketing supervisors.  He asserts that because he

14 was both a concierge and a marketing supervisor, he is a proper representative for both classes.

15 And he contends collective treatment is appropriate because he is similarly situated to all of

16 Diamond's concierges and marketing supervisors because they were all subject to the same pay

17 policies regardless of where they worked nationwide.  Diamond argues Delara's motion lacks an

18 evidentiary basis because it is grounded on Delara's declaration, but he lacks personal

19 knowledge about whether Diamond's policies apply nationwide because he worked at only four

20 resorts in Florida.

21    Unlike a Rule 23 class action where class members are automatically bound by the

22 judgement unless they "opt out" of the class, each plaintiff in a 29 U.S.C. § 216(b) collective

23 action must expressly opt in to the suit through written consent. *McElmurry v. U.S. Bank Nat.*

1 *Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).  To serve the "named plaintiffs' interest in

2 vigorously pursuing the litigation and the district court's interest in 'managing collective actions

3 in an orderly fashion . . . ,'" I have discretion to facilitate notice to the putative opt-in plaintiffs.

4 *Id.* (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

5        When considering whether to approve notice, I must determine whether to grant

6 preliminary certification of the FLSA collective action.  Also referred to as "provisional" or

7 "conditional" certification, preliminary certification is the first step in the "two-step" FLSA

8 certification process. *See Campbell v. City of L.A.*, 903 F.3d 1090, 1101-02, 1110 (9th Cir.

9 2018).  Preliminary certification under § 216(b) is not class certification by the traditional

10 understanding of the term, as it "does not 'produce a class with an independent legal status[ ] or

11 join additional parties to the action.'" *Id.* at 1101 (quoting *Genesis Healthcare Corp. v Symczyk*,

12 596 U.S. 66, 75 (2013)).  "'The sole consequence' of a successful motion for preliminary

13 certification is 'the sending of court-approved written notice' to workers who may wish to join

14 the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare*, 596 U.S. at 75).  Later,

15 generally "at or after the close of relevant discovery," the defendant may instigate the second

16 step of the certification process by moving for "decertification." *Id.* at 1109.  "If the motion for

17 decertification is granted, the result is a negative adjudication of the party plaintiffs' right to

18 proceed in a collective as that collective was defined in the complaint.  The opt-in plaintiffs are

19 dismissed without prejudice to the merits of their individual claims, and the original plaintiff is

20 left to proceed alone." *Id.*

21        In both certification steps, the key inquiry is whether the putative opt-in plaintiffs are

22 "similarly situated" to the named plaintiff. 29 U.S.C. § 216(b).  "[W]hat similarly situated

23 means [] is, in light of the collective action's reason for being within the FLSA, that party

1  plaintiffs must be alike with regard to some material aspect of their litigation." *Campbell*, 903

2  F.3d at 1114 (emphasis omitted).  "If the party plaintiffs' factual or legal similarities are material

3  to the resolution of their case, dissimilarities in other respects should not defeat collective

4  treatment." *Id.* (emphasis in original).  The burden on the plaintiffs in the first step is light, and is

5  "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* at

6  1109.  The court's "analysis is typically focused on a review of the pleadings but may sometimes

7  be supplemented by declarations or limited other evidence." *Id.*

8          Delara seeks to conditionally certify this case as a collective action for:

9          All current and former individuals who, at any time since January 3, 2016, are or
          were employed or hired as, or held the position of, "Concierge" and/or
10         "Marketing Supervisor" at any of Diamond's marketing and sales offices
          nationwide.

11

12 ECF No. 31 at 3.  Taking as true the allegations in the amended complaint along with Delara's

13 affidavit in support of his motion, Delara and the putative opt-in plaintiffs are similarly situated

14 for purposes of preliminary certification because they were subject to a single Diamond policy

15 that allegedly violated the FLSA's overtime requirements. *See* ECF Nos. 1; 31-3; *see also* ECF

16 Nos. 33-2 through 33-4.  According to Delara, concierges are paid on a commission basis, with

17 an hourly minimum wage advance that is recouped from earned commissions.  Diamond

18 classifies concierges as non-exempt employees who are eligible for overtime pay, and pays them

19 overtime when they work more than 40 hours in a workweek.  However, Delara contends that

20 Diamond incorrectly calculates overtime because it bases it on only the advanced minimum

21 wage and does not include commissions, which Delara contends are part of the concierges'

22 regular pay.  Delara makes similar allegations with respect to marketing supervisors, contending

23

1  that they are paid an hourly rate plus commissions and bonuses but are paid overtime based only

2  on their hourly rate.

3      Delara also explains how, as a Diamond employee, he would be familiar with Diamond's

4  polices. ECF Nos. 31-3; 33-2.  "Personal knowledge may be inferred . . . based on what the

5  affiant would have probably learned during the normal course of employment." *Pittman v.*

6  *Westgate Planet Hollywood Las Vegas, LLC*, No. 2:09-cv-00878-PMP-GWF, 2009 WL

7  10693400, at *8 (D. Nev. Sept. 1, 2009).

8      The cases Diamond relies on to argue against certification do not apply here.  In those

9  cases, either the defendant presented evidence that the plaintiff was not similarly situated to the

10 putative plaintiffs or the circumstances suggested the plaintiffs were not similarly situated to

11 putative plaintiffs nationwide. *See, e.g.*, *Suliaman v. Southwestern Furniture Stores of Wisconsin,*

12 *LLC*, 2:14-cv-01854-APG-PAL, ECF No. 79 at 6 (Apr. 8, 2016) (holding the plaintiff did not

13 establish grounds for a nationwide collective action where the defendant produced evidence that

14 its polices varied by state); *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex.

15 2007) (holding the plaintiff did not establish he was similarly situated where the defendant

16 produced evidence that as a head waiter he had different job duties than other wait staff);

17 *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (holding the plaintiff

18 did not make a showing for a nationwide class where the allegations "focus[ed] on the acts of

19 supervisors at the individual offices in Chesapeake and Virginia Beach" rather than on a

20 company-wide policy).  In contrast, Delara alleges a company-wide policy and Diamond has

21 presented no evidence to rebut that.

22

23

1    Delara has sufficiently shown at this early stage that the putative plaintiffs are

2 substantially similar through nationwide pay policies and practices.  Consequently, I grant

3 Delara's motion to conditionally certify a collective action.

4 **II.  FORM OF NOTICE AND NOTICE PROCEDURES**

5    **A.  Names, Addresses, and Email Addresses**

6    Delara requests that Diamond provide the names, addresses, and email addresses of all

7 putative collective class members within 10 days.  Diamond does not oppose this portion of

8 Delara's motion, so I grant it.

9    **B.  Form of Notice**

10    Delara provides proposed forms of an initial notice as well as an additional reminder

11 notice after 45 days.  He requests a 90-day period for putative plaintiffs to opt in.  Diamond

12 raises a host of objections to Delara's proposed form of notice and provides its own proposal.

13    1.  Neutrality

14    Diamond argues Delara's proposed notice is not neutral because it contains language

15 suggesting the court approves of the lawsuit, including the language in all capital letters in red on

16 every page as well as the ending paragraph that states the court has authorized the notice.

17 Diamond proposes alternative language that it contends is more neutral.  And it proposes

18 deleting the court caption on the notice.  Diamond also objects to the two-page recital of Delara's

19 claims followed by a perfunctory statement that Diamond denies it violated the law.  Delara

20 replies that the bolded language states that the court takes no position on the case and so is

21 neutral.

22    Delara does not respond to Diamond's request to remove the case caption, so I will order

23 Delara to delete it and to model the heading of its notice after Diamond's proposed notice. ECF

1 | No. 32 at 20.  I agree with Diamond that Delara's notice also must be revised to be more neutral.

2 | First, Delara's proposed notice has a footer on every page in red capital letters that states:

3 |     THIS IS <u>NOT</u> AN ADVERTISEMENT.  THIS IS BEING SENT TO YOU BY
    ORDER OF THE UNITED STATES DISTRICT COURT IN LAS VEGAS,
4 |     NEVADA.

5 | ECF No. 31-1.  Additionally, at the end of the notice, Delara proposed the following:

6 |     THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE
    FEDERAL DISTRICT COURT, THE HONORABLE ANDREW P. GORDON,
7 |     FEDERAL DISTRICT COURT JUDGE.  THE COURT HAS TAKEN NO
    POSITION IN THIS CASE REGARDING THE MERITS OF THE
8 |     PLAINTIFFS' CLAIMS OR OF DEFENDANT'S DEFENSES.

9 | *Id.* at 7.

10 |     This language suggests judicial endorsement of the action. *See Hoffmann-La Roche*, 493

11 | U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process,

12 | courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care

13 | to avoid even the appearance of judicial endorsement of the merits of the action."); *Gonzalez v.*

14 | *Diamond Resorts Int'l Mktg., Inc.*, No. 2:18-cv-00979-APG-CWH, 2019 WL 3430770, at \*4 (D.

15 | Nev. July 29, 2019).  I therefore direct Delara to delete the footer and to delete the first sentence

16 | of the paragraph on page 7 of the proposed notice.

17 |     Further, Delara's two-page recital of his own position followed by a single unadorned

18 | sentence that Diamond denies his allegations is not neutral.  The parties are directed to confer on

19 | a more neutral statement of the case.  Because counsel in this case is the same as in *Gonzalez*, a

20 | case involving very similar allegations, the parties should have no difficulty preparing a revised

21 | notice.

22 | / / / /

23 | / / / /

### 2.  Counsel

Diamond objects to the proposed notice requiring that opt-in plaintiffs automatically select Delara's counsel as theirs.  Diamond also requests that the notice inform opt-in plaintiffs about the percentage of counsel's contingency fee and how it is calculated.  Delara contends that designation of class counsel is proper because the collective action members can decide to appoint a representative even though each is bringing an individual claim.  Delara points to a notice I approved in another case to contend that the contingency agreement language is permissible.

Delara's proposed notice must be revised to inform putative plaintiffs that they may, but are not required, to select Delara's counsel to represent them.  I refer counsel to a form of notice I approved in another FLSA case. *See Reno v. Western Cab Company*, 2:18-cv-00840-APG-NJK, ECF No. 78 at 2-3.  The notice also must inform the putative plaintiffs of the percentage of the fee they would be agreeing to pay counsel, should they retain Delara's counsel, and how that fee will be calculated. *Gonzalez*, 2019 WL 3430770, at *4; *see also Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1151 (D. Nev. 2016).

### 3.  Opt-in Period

Diamond argues putative plaintiffs should have a 60-day opt-in period.  Delara seeks a 90-day period.  *Gonzalez* approved a 90-day opt-in period and I see no reason for a different time period here. *Gonzalez*, 2019 WL 3430770, at *5; *see also Reno*, ECF No. 70 at 6 (approving a 90-day period for an FLSA action).  I therefore approve a 90-day opt-in period, which begins on the date the notice is mailed.

////

////

1          4.  Limitation Period

2          Diamond argues the class period should be for only two years prior to the date the

3  complaint was filed because the FLSA has a two-year limitation period unless the violation was

4  willful, and Diamond contends there are no facts in the complaint to support willfulness.  Delara

5  responds that whether Diamond acted willfully is a merits question not suitable to resolution at

6  this stage.

7          The statute of limitations for FLSA claims is two years unless the violation was willful

8  and then it is three years. 29 U.S.C. § 255(a).  Whether Diamond acted willfully is a merits

9  question not suitable for resolution at the preliminary certification stage.  That issue is better

10  resolved on the merits or at decertification.  The notice therefore may refer to both the two-year

11  and three-year limitation periods.

12          5.  Consent Form

13          Diamond contends that the proposed consent form should delete the request for putative

14  plaintiffs' telephone numbers and social security numbers.  Delara responds that only those who

15  opt in will be providing that information and that information will assist counsel in

16  communicating with those they represent.

17          The consent forms will be filed with the court.  Thus, having opt-in plaintiffs file forms

18  disclosing their social security numbers and phone numbers unnecessarily risks having sensitive

19  personal information filed on the court docket if counsel makes a mistake and fails to redact each

20  notice.  Moreover, it is possible that some plaintiffs will opt in but will not select Delara's

21  counsel (or any other) to represent them.  In that case, counsel would have no need for phone

22  numbers and social security numbers.  Delara also does not explain why a social security number

23  is needed to communicate with clients.  If counsel later needs that information, it can request it

1    of the opt-in plaintiffs and justify the request to them.  I therefore direct Delara to revise the

2    consent form to delete the lines for social security numbers and phone numbers.

3                            6.  Communication with Putative Plaintiffs

4         Diamond also asserts that the language in the notice stating that Diamond cannot discuss

5    the case with its employees should be deleted.  Delara replies that Diamond should be precluded

6    from speaking with its employees about the case because that would risk coercion and abuse.

7         As a general matter, both parties are permitted to engage in pre-certification

8    communications with potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02

9    (1981) (discussing the issue in the context of class actions).  Consequently, "an order limiting

10   communications between parties and potential class members should be based on a clear record

11   and specific findings that reflect a weighing of the need for a limitation and the potential

12   interference with the rights of the parties." *Id.* at 101.  "Courts have, on occasion, limited pre-

13   certification communications with potential class members after misleading, coercive, or

14   improper communications were made." *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA,

15   2017 WL 5196780, at *5 (N.D. Cal. Nov. 10, 2017) (quotation omitted).

16        There is no evidence Diamond has engaged in any misleading, coercive, or otherwise

17   improper communications with putative class members.  Consequently, Delara must strike from

18   the notice the language stating that Diamond cannot communicate with putative plaintiffs.

19                            7.  Other Issues

20        Diamond argues the notice should advise putative plaintiffs that the collective action

21   could be decertified and it should remove reference to the website

22   www.diamondovertimelawsuit.com.  Delara does not respond to Diamond's argument about the

23   website and he has not presented the contents of the website for my review.  I therefore direct

1  Delara to delete the reference to the website.  Delara also has not responded to Diamond's

2  request that the notice advise putative plaintiffs that the action may be decertified, so Delara

3  must include this information.

4          **C.  Who Should Receive Notice**

5          Diamond argues that putative class members who have signed arbitration agreements or

6  who have settled their claims through another lawsuit should not receive notice of this lawsuit.

7  Delara replies that this is only the preliminary certification stage and issues going to the merits,

8  such as whether arbitration agreements exist or are enforceable or whether claims have been

9  released through other litigation, are merits questions that should not be resolved at this stage.

10          Diamond's argument relies on recent cases from the Fifth and Seventh Circuits[1] that have

11  held that the validity of arbitration agreements should be resolved before notice is sent to

12  putative plaintiffs in a collective action.  The Fifth Circuit ruled that "if there is a genuine dispute

13  as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a

14  collective action, as to a particular employee, has the burden to show, by a preponderance of the

15  evidence, the existence of a valid arbitration agreement for that employee." *In re JPMorgan*

16  *Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019).  The plaintiff can then rebut that showing

17  with additional evidence. *Id.*  "Where a preponderance of the evidence shows that the employee

18  has entered into a valid arbitration agreement, it is error for a district court to order notice to be

19  sent to that employee as part of any sort of certification.  But if the employer fails to establish the

20  existence of a valid arbitration agreement as to an employee, that employee would receive the

21

22  [1] Diamond filed a notice of supplemental authority to notify the court of the Seventh Circuit's decision.  Delara moves to strike because Diamond did not comply with the Local Rules by filing a motion for leave to file the notice of supplemental authority.  Diamond subsequently

23  moved for leave to file it, and Delara did not oppose that motion.  I therefore grant Diamond's motion and deny Delara's motion to strike as moot.

1   same notice as others. *Id.* at 503.  The Seventh Circuit reached a similar conclusion. *Bigger v.*

2   *Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).

3            The Ninth Circuit has not yet addressed this issue.  I join other courts who have declined

4   to follow *JPMorgan. See, e.g.*, *Cuevas v. ConAm Mgmt. Corp.*, No. 18CV1189-GPC(LL), 2019

5   WL 5520544, at *4-5 (S.D. Cal. Oct. 21, 2019) (collecting cases).  As Judge Hoffman stated in

6   *Gonzalez*, "[w]ithholding notice because of the existence of an arbitration agreement

7   presupposes the enforceability of the agreement . . . [and] the existence of an arbitration

8   agreement goes to an aspect of [Diamond's] defense, [so] the enforceability of such an

9   agreement is better reserved for stage two" of the certification process. 2019 WL 3430770, at *5.

10           The Fifth and Seventh Circuits' approach raises potential standing and due process

11  concerns and creates practical difficulties.  Those courts would have Delara litigate the

12  enforceability of other putative plaintiffs' arbitration agreements without notice to them or an

13  opportunity to respond.  It is unclear whether Delara has standing to do so. *Romero v. Clean*

14  *Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 534 (D. Mass. 2019).  But even if he

15  did, and even if doing so would not violate their due process rights, Delara would have "no way

16  of meaningfully contesting the validity" of the arbitration agreements because he does not know

17  which employees signed them "or the circumstances in which they signed" the agreements. *Id.*

18           Even if he could obtain discovery on the point, that illustrates the practical difficulties

19  raised by the Fifth and Seventh Circuits' approach.  Notice in this case has already been delayed

20  due to the court's heavy docket.  To delay notice further so that the parties can conduct discovery

21  on arbitration agreements for individuals who are not even parties to this case yet, then file new

22  motions to determine whether the agreements are valid without the participation of those parties,

23  and then factor in the time it would take for this court to address the motions, another year or

1    more could pass without even the first notice going out.  That is neither practical nor efficient.

2    *Hoffmann-La Roche Inc.*, 493 U.S. at 170-71 (stating that "the court has a managerial

3    responsibility to oversee the joinder of additional parties to assure that the task is accomplished

4    in an efficient and proper way").

5          I decline to evaluate at this time the enforceability of the arbitration agreements or the

6    alleged release of claims in another lawsuit (which the parties agree is not yet final on appeal).

7    But I will require Delara to include in the notice language that discusses how the arbitration

8    agreement and a release of claims may potentially affect opt-in plaintiffs.

9          **D.  How to Send Notice**

10         Delara requests that his counsel provide notice by mailing and emailing both the initial

11   notice and a reminder notice after 45 days.  He also requests that Diamond be required to post

12   the notice at its marketing and sales offices nationwide and to enclose the notice with the

13   currently employed workers' next regularly scheduled paycheck.  Diamond contends there is no

14   basis for anything other than a single initial notice by first class mail.  Diamond also requests a

15   third-party administrator send the notices and Diamond offers to pay for the third-party

16   administrator.  Delara replies that there is no reason to not provide reasonable means of notice to

17   putative plaintiffs and there is no need for a third-party administrator.

18         I will permit Delara's counsel to email the notice to those employees for whom Diamond

19   has email addresses, as well as send it by first class mail.  "Email is an efficient, reasonable, and

20   low-cost supplemental form of notice, particularly where [Diamond] may lack current physical

21   mailing address information for its former employees." *Phelps v. MC Commc'ns, Inc.*, No. 2:11-

22   CV-00423-PMP, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011).  A reminder notice after 45

23   days is also reasonable.

1    However, there is no basis for requiring Diamond to post the notice in the workplace or

2   include it with paychecks.  First class mail is sufficient, particularly where email notice also will

3   be provided. *See id.* (refusing to require the defendants to post a notice in the workplace because

4   "there is no indication that service by first class mail will be ineffective or inadequate").

5   Diamond does not identify a need for a third-party administrator in this case, there is no reason to

6   suspect Delara's counsel is incapable of properly handling notice, and Delara's counsel has

7   incentive to do it correctly.  I therefore deny the request for a third-party administrator.

8       **C.  Tolling**

9       Delara requests that I equitably toll the limitation period for the putative collective action

10  members from January 3, 2019 (the date this action was instituted) through the close of the

11  period during which the putative collective action members may join this suit.  Diamond argues

12  there is no basis to toll the limitation period.

13      The FLSA's limitation period can be equitably tolled. *Partlow v. Jewish Orphans' Home*

14  *of So. Cal.*, 645 F.2d 757, 760-61 (9th Cir. 1981), *abrogated on other grounds by Hoffmann–La*

15  *Roche, Inc*, 493 U.S. at 167 & n.1.  Courts in this district have equitably tolled the period of time

16  it took for the court to rule on the motion for certification of a collective action. *See, e.g.*,

17  *Dualan*, 172 F. Supp. 3d at 1153-54; *Guy v. Casal Inst. of Nev., LLC*, No. 2:13-CV-02263-APG-

18  GWF, 2014 WL 1899006, at *10 (D. Nev. May 12, 2014).  I have previously tolled the limitation

19  period for the same reason. *See Reno*, ECF No. 70 at 8.

20      As stated above, Delara's motion has been ripe but unresolved for many months due to

21  this court's heavy docket.  Consequently, the potential opt-in plaintiffs "could be unfairly

22  prejudiced by the court's delay in resolving the motion." *Dualan*, 172 F. Supp. 3d at 1154.

23  Diamond "would not be unfairly prejudiced" by equitably tolling this time "because it was aware

14

1 | from the outset that the scope of its potential liability extends to all" concierges and marketing

2 | supervisors who worked for Diamond "during the statutory period." *Id.*

3 | I thus toll the limitation period starting August 30, 2019 (30 days after Delara's motion

4 | became ripe), until the form of notice is finally approved. If a plaintiff opts in before Diamond

5 | provides that information, the tolling period for that plaintiff runs from August 30, 2019 until the

6 | date of that plaintiff filed a written consent to opt-in. Tolling does not apply to the plaintiffs who

7 | opted in before August 30, 2019.

8 | **III.  CONCLUSION**

9 | I THEREFORE ORDER that plaintiff Alberto Delara's motion to strike **(ECF No. 50) is**

10 | **DENIED as moot**.

11 | I FURTHER ORDER that defendant Diamond Resorts International Marketing Inc.'s

12 | motion for leave to file supplemental authority **(ECF No. 53) is GRANTED**.

13 | I FURTHER ORDER that plaintiff Alberto Delara's motion to conditionally certify a

14 | collective action **(ECF No. 31) is GRANTED in part as follows**:

15 | • I conditionally certify a collective action for "All current and former individuals
who, at any time since January 3, 2016, are or were employed or hired as, or held
16 | the position of, 'Concierge' and/or 'Marketing Supervisor' at any of Diamond's
marketing and sales offices nationwide."

17 |

• Diamond must provide the names, addresses, and email addresses of all putative
18 | collective class members to plaintiff's counsel within 10 days of this order.

19 | • Delara is instructed to make all necessary changes consistent with this order,
and to confer with Diamond's counsel prior to resubmitting an amended proposed
20 | notice and consent form. An amended proposed notice and consent form must be
submitted to the court within 30 days from the date of this order. If the parties

21 | / / / /

22 | / / / /

23 | / / / /

15

cannot agree on the form despite my directions, they each shall submit a proposed form and briefly explain why their suggested language is proper here.

DATED this 30th day of April, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

16