**MICHAEL N. FEDER**
Nevada Bar No. 7332
DICKINSON WRIGHT PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Telephone:    702-550-4400
Facsimile:    844-670-6009
Email:        mfeder@dickinsonwright.com

**MARTIN D. HOLMES** (*Pro Hac Vice*)
Tennessee Bar No. 012122
**PETER F. KLETT** (*Pro Hac Vice*)
Tennessee Bar No. 012688
**AUTUMN L. GENTRY** (*Pro Hac Vice*)
Tennessee Bar No. 020766
DICKINSON WRIGHT PLLC
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone:    615-244-6538
Facsimile:    844-670-6009
Email:        mdholmes@dickinsonwright.com
              pklett@dickinsonwright.com
              agentry@dickinsonwright.com

*Attorneys for Plaintiff and FLSA Collective Action Members*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| ALBERTO DELARA, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC.,<br><br>Defendant. | Case No. 2:19-cv-00022-APG-NJK<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE FLSA COLLECTIVE ACTION SETTLEMENT AND SUPPORTING MEMORANDUM** |

Plaintiff Alberto Delara ("Plaintiff" or "Delara"), on behalf of himself and the Opt-in Plaintiffs (referred to collectively as "FLSA Collective Action Members"), respectfully moves the Court to approve the settlement as set forth in the Parties' Settlement Agreement and Release



1

attached as **<u>Exhibit 1</u>** (the "Agreement").  For the reasons discussed below, Plaintiff requests an order approving the Parties' Agreement to settle this action for **$1,159,137.00** on the terms and conditions set forth in the Agreement.

**RELEVANT PROCEDURAL HISTORY**

On January 3, 2019, Plaintiff initiated this FLSA collective action on behalf of himself and all similarly situated current and former Concierges and Marketing Supervisors who worked for Defendant Diamond Resorts International Marketing, Inc. at any time since December 28, 2015, alleging that Defendant's policies and procedures of calculating overtime pay without including commissions and bonuses in the regular rate of pay violated the Fair Labor Standards Act ("FLSA").  Specifically, Plaintiff alleged that the FLSA requires an employer to pay overtime based on the employees' regular rate of pay, which includes *all* compensation earned for the workweek, including commissions and bonuses.  However, when determining the regular rate of pay to calculate overtime pay, Defendant only used the hourly rate for Concierges and Marketing Supervisors, thereby failing to include commissions and bonuses.  *ECF No. 1, Compl., ¶¶ 1, 4, 10 & 11.*  Plaintiff also alleged that Marketing Supervisors were not exempt from the overtime requirements under the FLSA because they were paid at an hourly rate, as opposed to a salary, plus commissions and bonuses.  Thus, Marketing Supervisors did not meet the salary basis test for a managerial exemption under the FLSA.  *Id., ¶¶ 6 & 9.*  Plaintiff sought damages on behalf of himself and the putative collective class for unpaid overtime, an equal amount in liquidated damages, and attorney's fees and costs.  *Id., ¶ 12.*

On February July 8, 2019, Plaintiff filed a Motion for Conditional Certification of this Matter as a Collective Action and Approval of 29 U.S.C. § 216(b) Notice and Supporting Memorandum.  *ECF No. 31.*  Defendant vigorously opposed conditional certification and the matter was briefed extensively at great time and expense.  *ECF No. 32, Def.'s Opp.; and ECF No. 33, Pl.'s Reply.*

By Order entered on April 30, 2020 (*ECF No. 64*), the Court granted conditional certification, finding that Plaintiff was similarly situated to current and former Concierges and

Marketing Supervisors nationwide. As part of the April 30, 2020 Order, the Court directed that notice be sent to all current and former Concierges and Marketing Supervisors who worked for Defendant with an accompanying consent form to join the lawsuit if they so desired. *Id., p. 15.*

After several meet and confers, the parties submitted a Stipulation and Order to Approve Court-Supervised Notice, Reminder Notice and Consent Form on June 1, 2020. *ECF Nos. 77 (Stipulation and Order), and 77-1 (Proposed Notice, Reminder Notice and Consent Form).* Per the parties' Stipulation, the Notice would be sent to all current and former Concierges and Marketing Supervisors who worked for Defendant since August 30, 2016. *ECF No. 77-1, Proposed Notice, p. 1.*

On June 8, 2020, the Court an issued an Order Approving the Court-Supervised Notice, Reminder Notice and Consent Form. *ECF No. 79, Order.*

By the end of the opt-in period, 253 individuals filed Consent Forms and joined the lawsuit, including Plaintiff Alberto Delara and several individuals who joined the lawsuit prior to the issuance of Court-supervised Notice. *Ex. 2, Declaration of Martin Holmes ("Holmes Decl."), ¶ 18.*

At the conclusion of discovery, Defendant filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment of Plaintiff Alberto Delara and Certain Opt-in Plaintiffs Pursuant to FRCP Rule 56. *ECF No. 141, Def.'s MT.* By Order entered December 27, 2021, the Court granted Defendant's Motion for Summary Judgment, in part. *ECF No. 182, Order.* As a result, **207** FLSA Collective Action Members remain in the lawsuit and are subject to the Agreement. *Ex. 2, Holmes Decl., ¶ 19.*

On March 1, 2021, Defendant filed a Motion to Dismiss Pursuant to FRCP Rule 12(b)(1) and 12(h)(3), arguing that certain FLSA Collective Action Members were subject to Defendant's arbitration agreement and should be dismissed from the lawsuit. *ECF No. 139, Def.'s MT.* The Court granted Defendant's Motion to Dismiss, in part, holding that those FLSA Collective Action Members who were subject to Defendant's arbitration agreement were compelled to submit their

claims to arbitration. *ECF No. 181, Order, p. 6.* Rather than dismissing their claims, the Court stayed the case as to those individuals pending the completion of arbitration. *Id., pp. 6-7.*

Based on the Court's ruling, 125 of the 207 FLSA Collective Action Members in the lawsuit were compelled to pursue their claims in arbitration. *Ex. 2, Holmes Decl.,¶ 21.* Further, given that Defendant's arbitration agreement contained a class and collective action waiver, these individuals would have to pursue their arbitration claims on an individual basis. *Id.* Finally, in each arbitration action, Defendant would argue that the FLSA Collective Action Member's claim was not tolled by the filing of his or her Consent Form in this case.[1] The Parties' Agreement eliminates the need for these 125 individuals to file separate arbitration claims. *Id.*

Since the filing of the lawsuit over 3 ½ years ago, the case has been hotly contested with extensive written discovery, multiple discovery disputes (some involving numerous, lengthy meet and confers, and some resulting in the filing of motions to compel), multiple depositions, extensive and protracted motion practice, expert proof, expert depositions, a failed mediation in December 2020, and a successful mediation on April 6, 2022. As a result, the Parties have incurred hundreds of thousands of dollars in attorney's fees and Plaintiff has incurred over $125,000.00 in expenses, a substantial amount of which is attributable to Plaintiff's experts, Charles River Associates ("CRA"), who were essential and necessary in the prosecution of this case, particularly in the examination and analysis of Defendant's time and pay data on the issue of liability, and also to calculate unpaid overtime owed to each FLSA Collective Action Member. *Id., ¶ 22.*

Plaintiff moves, without Defendant's opposition, for approval of a **$1,159,137.04** settlement that resolves all claims in this litigation for the 207 FLSA Collective Action Members, as reflected in the Agreement attached hereto as **Exhibit 1**.[2] As discussed below, the parties have

---

[1] In its Order, the Court declined to rule on the tolling issue, directing the parties to present their respective arguments to the arbitrator. *ECF No. 181, p. 7.*

[2] This case and the related companion case of *Gonzalez, et al. v. Diamond Resorts International Marketing, Inc., et al.*, Case No. 2:18-cv-00979-APG-NJK (the "*Gonzalez* case"), were mediated together on April 6, 2022, and were settled collectively for **$7,900,000.00**. After determining the amount of overtime wages, liquidated damages, and separating attorney's fees, costs and settlement administration fees for each case, **$6,740,862.96** was allocated to the *Gonzalez* case and **$1,159,137.04** was allocated to this case on a *pro rata* basis based on the total number of workweeks of Plaintiffs, FLSA Collective Action Members and Hawaii Class Members in the cases combined. Because the *Gonzalez* case is a "hybrid" action which includes a Rule 23 class component, Plaintiffs Daniel Gonzalez and Jeffrey

4

reached an agreement which provides *more* than complete and total monetary relief to the 207 FLSA Collective Action Members. *Ex. 2, Holmes Decl., ¶ 24.* More specifically, and as discussed below, the minimum Net Settlement Amount[3] will provide each FLSA Collective Action Member with a payment that equals **100%** of their miscalculation of overtime claim, thereby ensuring that each FLSA Collective Action Member will receive *the most* that they could have possibly received had they gone to trial or arbitration and prevailed on all issues, including the amount of their miscalculation claims, an equal amount in liquidated damages, and the maximum three-year recovery period under the FLSA. In addition, after each FLSA Collective Action Member receives **100%** of his or her miscalculation claim, a residual amount of at least **15.56%** of the Net Settlement Amount will remain, which will be distributed amongst most FLSA Collective Action Members on an adjusted pro rata basis using the formula discussed below based on the number of workweeks that each FLSA Collective Action Member worked during the Recovery Period. *Id., ¶¶ 24-25*.

For these reasons, and for the reasons discussed below, the Court should grant approval of the Agreement.

**KEY SETTLEMENT TERMS**

The Agreement resolves fully, finally, and with prejudice, the claims of FLSA Collective Action Members. The key terms of the Agreement include the following, subject to the Court's approval:

1.      Defendant will pay **$1,159,137.04** (the "Gross Settlement Amount"),[4] which is the maximum amount Defendant can be required to pay under the Agreement, including all: a) payments to FLSA Collective Action Members; b) FLSA Collective Action Class Members' tax

---

Hughes filed an unopposed motion for preliminary approval of the Rule 23 settlement, which was granted. Notice has been sent to Hawaii Class Members and the final approval hearing is set for November 8, 2022.

[3] The Agreement defines "Net Settlement Amount" as the Gross Settlement minus Class Counsel's attorney's fees and costs, the Incentive Award for the Named Plaintiff, which includes consideration for his general release, and settlement administration costs. *Ex. 1, Amt., ¶ 16.*

[4] "Gross Settlement Amount" is defined in Paragraph 10 of the Agreement. *See Ex. 1, Amt., ¶ 10.*

obligations;[5] c) Class Counsel's fees; d) Class Counsel's costs; e) settlement administrator costs; and f) the Incentive Award payment to the Named Plaintiff, which includes consideration for his general release. Unless the Agreement is voided or not approved by the Court, none of the settlement funds revert to Defendant. *Ex. 1, Amt.,¶ 25.*

2.      Defendant agrees not to oppose Plaintiff's request for Class Counsel's attorney's fees not to exceed $620,801.50 and costs not to exceed $125,059.00. All attorney's fees and costs awarded to Class Counsel will be paid out of the Gross Settlement Amount. *Id., ¶ 26.*

3.      Defendant agrees not to oppose Named Plaintiff's motion for an Incentive Award in the amount of $20,000.00, which includes consideration for his general release. The Incentive Award will be paid out of the Gross Settlement Amount.  *Id., ¶ 27.*

4.      KCC Class Action Services, LLC ("KCC"), or another settlement administrator approved by the Court, will administer the settlement.[6] All settlement administration costs, not to exceed $19,500.00, shall be paid out of the Gross Settlement Amount. To the extent that the settlement administration costs are less than the not-to-exceed quote of $19,500.00, the difference will be added to the Net Settlement Amount. *Id., ¶ 28.*

5.      The Settlement Administrator's responsibilities will include establishing a Qualified Settlement Fund ("QSF"), as well as other duties and responsibilities to administer the Settlement in accordance with the Agreement. *Id., ¶¶ 19, 28-30 & 34.*

6.      The Net Settlement Amount payable to FLSA Collective Action Members will consist of the Gross Settlement Amount minus: a) Class Counsel's attorney's fees and costs; b) the Incentive Award for the Named Plaintiff, including consideration for his general release; and c) settlement administration costs. *Id., ¶ 16.*

---

[5]  Defendant remains responsible for paying its portion of payroll taxes (including FICA, FUTA and SUTA), and such amounts are neither included in nor will be deducted from the Gross Settlement Amount.

[6]  Subject to the Court's approval, Class Counsel has selected KCC as the settlement administrator. Defendant has approved KCC to serve as the settlement administrator. The Court approved KCC as the settlement administrator in the companion *Gonzalez* case.



7.      The claim shares from the Net Settlement Amount will be distributed to FLSA Collective Action Members as determined by Class Counsel, subject to Court approval. *Id., ¶ 9.* The proposed formula is described in the following section of this Motion.

8.      Following Final Approval of the FLSA Collective Action Settlement, Class Counsel will provide Defendant's Counsel and the Settlement Administrator the amounts payable to the Named Plaintiff and each FLSA Collective Action Member for his or her claim share, as well as the amounts payable to the Named Plaintiff for the Incentive Award and consideration for his general release in accordance with the methodology and formula approved by the Court. Within twenty (20) days after Class Counsel provides to Defendant's Counsel and the Settlement Administrator the amounts payable to the Named Plaintiff and each FLSA Collective Action Member for his or her claim share, Defendant will provide reasonably ascertainable data, in electronic form where available, in Defendant's files or possession to the Settlement Administrator to enable the Settlement Administrator to carry out its duties.  Such data includes, but is not limited to, each FLSA Collective Action Member's Last Known Address, Last Known E-mail Address, Social Security number, and tax withholding information if the Settlement Administrator states such information is necessary. *Id. ¶ 29.*

9.      The "Effective Date" of the Settlement is 35 days after the Order Granting Judgment and Final Approval of the FLSA Collective Action Settlement is entered if no appeal or other challenge of said Order is filed within that thirty-five-day (35-day) period; or upon the final disposition of any appeal or other challenge that has the effect of affirming the Order Granting Judgment and Final Approval of the FLSA Collective Action Settlement in its entirety. *Id. ¶ 6.*

10.     Within 14 business days of the Effective Date of the Settlement, Defendant shall wire or deliver certified funds for the Gross Settlement Amount plus the Employer Payroll Taxes in the amount advised by the Settlement Administrator to the Settlement Administrator to deposit into the QSF.  If the Court does not approve the Settlement, or if the Order Granting Judgment and Final Approval of the FLSA Collective Action Settlement is reversed on appeal or other successful

challenge, then there shall be no Effective Date and the Settlement shall become null and void. *Id.*

¶ *31*.

11.    Within 14 business days after receipt of the Gross Settlement Amount funds, the Settlement Administrator shall disburse the settlement amounts in accordance with the Agreement. *Id., ¶ 34(a)*.

## PROPOSED DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

During discovery, Defendant provided voluminous time and pay records related to FLSA Collective Action Members, including large amounts of electronic data.  To facilitate the review and analysis of these records, and to calculate the amount of overtime due and owing to each FLSA Collective Action Member for his or her miscalculation claim, Plaintiff retained CRA.  Based on their review and analysis of Defendant's records, CRA determined that FLSA Collective Action Members were underpaid overtime and that based on its calculations, had Defendant paid overtime based on a regular rate that included all compensation (*e.g.* commissions and bonuses), FLSA Collective Action Members would have received an additional **$157,818.30** in overtime pay, which doubled for liquidated damages equals **$315,636.60**.  Further, based on their review and analysis of Defendant's records, CRA determined how much each FLSA Collective Action Member was owed during the Recovery Period. *Ex. 2, Holmes Decl., ¶ 26*.

The Gross Settlement Amount is $1,159,137.04.  If the Court awards Class Counsel attorney's fees in the amount of $620,801.50 and costs in the amount of $125,059.00, awards Named Plaintiff an Incentive Award in the amount of $20,000.00, and the settlement administrator fees are the maximum amount of the Settlement Administrator's "not to exceed" quote of $19,500.00, that will result in a Net Settlement Amount of **$373,776.54**.  After subtracting **$315,363.50** for the total overtime pay owed to FLSA Collective Action Members for the miscalculation claims, doubled for liquidated damages, a minimum residual in the amount of **$58,139.94** is left to distribute to FLSA Collective Action Members. *Id., ¶ 27*.

It is important to note at this point that during discovery, and based on Defendant's pay records analyzed by CRA, it was determined that **17** FLSA Collective Action Members who

worked as Marketing Supervisors were paid on a *salary* basis, along with commissions and bonuses, and were *not paid* at an hourly rate as were other certain Marketing Supervisors. Based on the foregoing, if the case were to proceed to trial or individual arbitrations, Defendant would likely succeed in arguing that these individuals were not entitled to *any* overtime pay whatsoever for the workweeks in the Recovery Period that they worked as salaried Marketing Supervisors. *Id., ¶ 28.*[7]

Based on the foregoing, Plaintiff and Class Counsel have devised the following formula to allocate the Net Settlement Amount, subject to the Court's approval. Initially, each FLSA Collective Action Member who worked as a Concierge or Marketing Supervisor will receive his or her pro rata share of the **$315,636.60** for overtime pay and liquidated damages based on his or her miscalculation of overtime claim. This compensates each of them at a rate of **100%** for their claims in this lawsuit for Defendant's alleged underpayment in overtime, doubled for liquidated damages and allowing for the maximum recovery period under the FLSA). *Id., ¶ 29.*

As to the minimum residual of $58,139.94 left after deducting the miscalculation claims totaling $315,636.60, based on discovery and the extensive work done by Class Counsel, including extensive interviews with FLSA Collective Action Members, it was determined that, in general, hourly-paid Marketing Supervisors worked longer hours and made more money than Concierges. *Id., ¶ 30.* Therefore, Plaintiff proposes dividing the residual into two "buckets;" two-thirds payable to the hourly-paid Marketing Supervisors and one-third payable to Concierges. As to each "bucket," hourly-paid Marketing Supervisors and Concierges will receive his or her pro rata share of any residual based on the number of their workweeks during the Recovery Period. *Id.*

In Class Counsel's opinion, based on their extensive knowledge of the case and the claims asserted, this is the fairest and most equitable way to distribute the residual amount. *Id., ¶ 31.*

---

[7] Of the 17 FLSA Collective Action Members who worked as salaried Marketing Supervisors, 11 also worked as Concierges during the Recovery Period, so Defendant's legal argument regarding the managerial exemption would not apply to any overtime pay owed to them during the timeframes in the Recovery Period that they worked as Concierges. *Ex. 2, Holmes Decl., n. 1.*

DICKINSON WRIGHT
ATTORNEYS AT LAW

**LAW AND ARGUMENT**

## I.    The Settlement Meets the Requirements for Final Approval

Any settlement of an FLSA collective action requires the approval of either the secretary of labor or the district court. *Seminiano v. Xyris Enter., Inc.,* 602 F. App'x 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 , 1306 (11th Cir. 2013) and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *See, e.g.*, *Zako v. Hamilton Company*, 2020 WL 406376, at *4 (D. Nev. Jan. 24, 2020); and *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999) ("The § 216(b) requirement that plaintiffs consent to the suit serves essentially the same due process concerns that certification serves in a Rule 23 action."). Thus, the approval of settlements of FLSA claims is a separate, but related, analysis from the approval of settlements of class action claims. *Zako*, at *4.

The FLSA does not expressly set forth criteria for courts to consider in determining whether to approve a FLSA settlement and the Ninth Circuit has not established any particular criteria.  In response, district courts in this circuit have looked to the Eleventh Circuit's opinion in *Lynn's Food.  See, e.g., Zako*, at *4 (D. Nev. Jan. 24, 2020); *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367 (D. Nev. 2018); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); *Trinh v. JPMorgan Chase & Co.*, 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009); and *Hand v. Dionex Corp.*, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007).

Under *Lynn's Food*, the Court can approve a FLSA settlement if it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355.  "In those lawsuits, the parties may 'present to the district court a proposed settlement' and 'the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.'" *Nall*, 723 F.3d at 1306 (quoting *Lynn's Food*, 679 F.2d at 1353).

To determine the fairness of a FLSA settlement, "the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food*, 679 F.2d at 1354. In evaluating the fairness and reasonableness of a FLSA settlement, the majority of Rule 23's fairness factors are instructive and relevant. *See, e.g., Zako*, at *4; *Lewis v. Vision Value, LLC*, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012); and *Almodova v. City & Cnty. of Honolulu*, 2010 WL 1372298 (D. Haw. Mar. 31, 2010), report & recommendation adopted, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). Rule 23's fairness factors include: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; the amount offered in settlement; 4) the extent of discovery completed and the stage of the proceedings; and 5) the experience and views of counsel. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

## A. A Bona Fide Dispute Exists

The 3 ½+ year history of the case, with over 200 filings, establishes the existence of a bona fide dispute. *See Davis v. Omnicare, Inc.*, 2021 WL 1214501 *8 (E.D. Ky. Mar. 30, 2021) (holding that protracted litigation is strong evidence of a bona fide dispute where the parties briefed numerous complex issues, such that "every inch of ground has involved combat").

## B. The Rule 23 Fair Factors are Met

As to the first three factors listed above (the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial), while FLSA Collective Action Members have a strong case on the issue of liability (with the possible exception of FLSA Collective Action Members who worked exclusively as *salaried* Marketing Supervisors), given the nature of the dispute and the uncertainties inherent in any FLSA collective action litigation, should the case proceed there are certain risks. First, based on the Court's ruling, **125** of the remaining **207** individuals in the case

(60.38%) have been compelled to pursue their claims in arbitration, and because Defendant's arbitration agreement includes a class and collective action waiver, each of these individuals must file separate arbitration claims, which could take years to complete. Undoubtedly, many will elect not to do so given the relatively small amount of their individual claims, resulting in them receiving nothing. Further, Defendant will argue that the claims of these individuals were not tolled by the filing of their FLSA Consents to join this action.[8] Thus, these individuals run the risk of having their claims diluted or completely extinguished should they file an arbitration claim and the arbitrator rules that there is no tolling.

By granting Defendant's Motion to Dismiss, in part, on the arbitration issue, and by compelling **125** of the FLSA Collective Action Members to individual arbitrations, the Court effectively reduced the number of FLSA Collective Action Members who could pursue their claims at trial by **60.38%**. Given that the Settlement includes those individuals, Plaintiff is able to maintain the collective action status for *all* FLSA Collective Action Members who, as discussed above and below, will receive *more* than the maximum amount they could have received had they gone to trial.

Second, Defendant has maintained throughout this litigation that it acted in good faith. The Court denied Plaintiffs' Motion for Partial Summary Judgment as to good faith, finding that there was a genuine issue of material fact to be tried. *ECF No. 183, Order, pp. 5-7.* If the case went to trial and/or individual arbitrations were filed and Defendant prevailed on this issue, FLSA Collective Action Members would only receive their overtime pay, and not an equal amount in liquidated damages.

Third, Defendants have maintained throughout this litigation that they did not act willfully. The Court denied Plaintiffs' Motion for Partial Summary Judgment as to willfulness, finding that there was a genuine issue of material fact to be tried. *Id., Order, pp. 5-7.* If the case went to trial and/or individual arbitrations were filed and Defendant prevailed on this issue, FLSA Collective

---

[8]  In its Order compelling arbitration, the Court declined to rule on this issue, finding that it would be more appropriately addressed in each individual arbitration. *No. 181, p. 7.*

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

Action Members would only receive their overtime pay for a two-year recovery period – not a three-year recovery period based on a willful violation of the FLSA.

Fourth, following the trial, either side could appeal the Court's verdict, as well as the Court's pretrial orders, including the Court's Orders holding that the retail or service establishment exemption does not excuse Defendant from the overtime requirements under the FLSA. *ECF No. 184, Order*. Were Defendant to appeal this issue and prevail, FLSA Collective Action Members would receive no recovery whatsoever.

Given the complexities of this litigation, and the substantial risks of continuing to litigate, including the potential filing of 125 individual arbitration claims and appeal,[9] Plaintiff submits that the Settlement represents a very favorable resolution for FLSA Collective Action Members. Importantly, the Agreement eliminates any further prosecution of this case, including a trial and hundreds of potential arbitration claims, which would be lengthy and expensive. Further, the Agreement eliminates the risks, difficulties, and uncertainties of litigation, trial, post-trial proceedings and multiple arbitrations.

As to the proposed settlement amount, in assessing the consideration obtained by collective class members in a settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In most class and collective action cases, after deducting attorney's fees and costs, the class is getting *less* than their maximum recovery. In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Here, however, this is inapplicable because FLSA Collective Action Members will receive a minimum Net Settlement Amount of **$373,776.54**. Even after the maximum amounts of attorney's fees, costs, the Incentive Award and settlement administration fees are deducted from the Gross Settlement Amount, FLSA Collective Action Members will not

---

[9]  The Court previously held that 125 Opt-in Plaintiffs were compelled to filing individual arbitrations. *See ECF No. 199, Order*.

only receive **100%** of their miscalculation claims, and an equal amount representing liquidated damages for the full, three-year recovery period under the FLSA, but with the exception for the workweeks that certain FLSA Collective Action Members worked as *salaried* Marketing Supervisors, FLSA Collective Action Members will receive a *premium* totaling an additional **18.44%**.  Thus, the minimum Net Settlement Amount *exceeds* what they could have recovered had they gone to trial and been completely successful, including findings that Defendant did not act in good faith and acted willfully.

As to the extent of discovery completed and the stage of the proceedings, "[c]lass action settlements are favored more when a considerable amount of discovery has been conducted, and this is because the considerable discovery 'suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'"  *Lusk v. Five Guys Enterprises LLC*, 2019 WL 7048792, at *7 (E.D. Cal. Dec. 23, 2019) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)).  Under this factor, the Court analyzes the degree of case development accomplished prior to settlement in order to determine whether counsel had sufficient appreciation of the merits of the case before negotiating the settlement.  *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 813 (3d Cir. 1995).

This action was filed on January 3, 2019.  Since that time, the parties engaged in over 3 ½ years of highly contentious litigation involving extensive written discovery (including voluminous electronic data going back to January 3, 2016), depositions, expert proof, and extensive motion practice.  Discovery is complete and the Court has ruled on all pending motions, including dispositive motions.

The parties have engaged in two eight-hour mediations, one in December 2020 which failed, and the other on April 6, 2022, which was successful.[10]  The April 6, 2022 mediation was conducted by David Rotman, a neutral, highly respected and experienced class action mediator.

---

[10]  The fact that the settlement was achieved during a mediation conference presided over by a neutral mediator is a factor supporting the reasonableness of the proposed settlement.  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 946.

1    Attorneys for the parties were present during these settlement negotiations, as was in-house

2    counsel for Defendant.  With Mr. Rotman's assistance, the parties extensively discussed the merits

3    of the claims and defenses, as well as the relief available to FLSA Collective Action Members

4    before agreeing to basic settlement terms.    Thereafter, the parties engaged in protracted

5    negotiations regarding the terms of the Agreement over a period lasting more than three months

6    before the Agreement presently before the Court was finalized.  Further, the parties have expended

7    hundreds of thousands of dollars in attorney's fees and Plaintiff has incurred over $125,000.00 in

8    costs, the majority of which was related to Plaintiff's experts.  Based upon this litigation history,

9    the completion of discovery and dispositive motions, "counsel had a good grasp on the merits of

10    their case before" the successful April 6, 2022 mediation.  *See Rodriguez v. West Publ'g Corp.*,

11    563 F.3d 948, 967 (9th Cir. 2009).  Thus, the stage of the proceedings weighs heavily in favor of

12    approval.

13         As to the experience and views of Class Counsel, the Ninth Circuit has declared that

14    "[p]arties represented by competent counsel are better positioned than courts to produce a

15    settlement that fairly reflects each party's expected outcome in litigation." *Id.* (quoting *In re Pac.*

16    *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Throughout this litigation, FLSA Collective

17    Action Members had the benefit of highly experienced counsel.  *See Ex. 2, Holmes Decl., ¶¶ 4-*

18    *12*.  Class Counsel have approximately 85 years of combined experience litigating class and

19    collective actions with over 20 multi-million dollar settlements.  *Id., ¶¶ 11-12*.  Michael Feder,

20    Martin Holmes, Peter Klett and Reid Estes each have more than 30 years of civil litigation practice,

21    and as to Holmes, Klett, and Estes, the past 25 years being devoted largely to class and collective

22    action cases.  *Id., ¶¶ 4, 9-11*.[11]  It is well established that significant weight should be attributed to

23    the opinion of experienced counsel that a settlement is in the best interests of the class.  *See*

24    *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (the court should defer to the judgment

25    of experienced counsel who has evaluated the strength of plaintiff's case); *In re Telectronics*

26    *Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("The Court should always give

27

28    [11]  In addition, Ms. Gentry has devoted most of the past 10 years to handling class and collective action cases.  *Ex. 2, Holmes Decl.,* ¶ 11.

significant weight to the belief of experienced Counsel that the settlement is in the best interest of the class.") (citation omitted).

## II.    The Court Should the Approve the $20,000 Incentive Award to Delara

The Agreement provides that Delara will request an Incentive Award in the amount of $20,000.00, which includes consideration for a general release of all claims against Defendant.

Courts may make separate awards to the collective class representatives and opt-in plaintiffs in recognition of their financial or reputational risks taken, time expended and benefits to the class. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); accord *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); *see also Sand v. Greenberg*, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"); and *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in bringing suit against his former employer. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

In determining the amount to award a named plaintiff, the Court should consider the amount of time Delara spent on the litigation, the risks and burdens carried by Delara as a result of the litigation, and the particular benefit that Delara provided to FLSA Collective Action Members as a whole throughout the litigation. *See Goodwin v. Winn Mgmt. Group LLC*, 2017 WL 3173006, at *12 (E.D. Cal. July 26, 2017) (citation omitted).

The following facts support approval of a $20,000.00 Incentive Award. First, this amount represents only approximately 1.7% of the Gross Settlement Amount. Second, Delara was a highly paid Concierge and Marketing Supervisor, earning over six figures annually. *Ex. 2, Holmes Decl., ¶¶ 32-33.* Third, Delara recognized the manner in which he was paid overtime and questioned its legality, which prompted him to consult with legal counsel. *Id., ¶ 34.* Fourth, Delara was willing

to serve as the Named Plaintiffs representing over 1,671 putative FLSA Collective Action Members, which would require his name to be publicly listed on all pleadings in this case against one of the largest vacation ownership companies in the industry.  At the time Delara filed this lawsuit, he had worked for years in the vacation ownership industry and ran the risk of being "blackballed" by other vacation ownership companies, which are made up of a tight knit community of individuals who frequently move from one vacation ownership company to another. *Id.,* ¶ *35*.  Fifth, Delara recognized that this could potentially result in costly and protracted litigation for himself and Defendant, which ended up being the case in the 3 ½+ year litigation. *Id.,* ¶ *36*.  Sixth, Delara recognized that the retail and service establishment exemption contained in the FLSA would be at issue and that the Court would likely rule on this issue, creating precedent which would not only affect Defendant, but also other vacation ownership companies desiring that the exemption apply so that they would not be legally required to pay overtime to their employees. *Id.,* ¶ *37*.  Seventh, Delara was heavily involved in the case from its inception, including the drafting of the Complaint, the filings for conditional certification (in which he submitted two declarations), opposition to Defendant's retail and service establishment defense, the preparation of voluminous written discovery responses, being deposed, and participating in two eight-hour mediations. *Id.,* ¶ *38*.  Finally, the Incentive Award includes a general release for Delara for any and all claims against Defendant, which is worthy of additional monetary consideration. *Id.,* ¶ *39*.

Based on the foregoing, the Court should approve Delara's request for an Incentive Award in the amount of $20,000.00.

### III.    The Court Should Approve Plaintiff's Request for Attorney's Fees and Costs

####       A.      Attorney's Fees

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).  *See also, Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 and fn. 5-6 (1978); *Aleyska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 261-62 fn. 34-36 (1975).  In contrast to many other fee-shifting statutes where an award of attorney's fees to

1    the prevailing party is discretionary, an award of attorney's fees incurred by the prevailing

2    plaintiffs is mandatory under the FLSA.  *See e.g., Reindeau et al, v. Carson Partners LP*, 2013

3    WL 6728141 (D. Az. 2013); *Lemus v. Timberland Apts., LLC.*, 876 F. Supp. 2d 1169, 1176 (D.

4    Or. 2012); *Stanley v. McDaniel*, 128 Idaho 343, 349, 913 P. 2d 76, 82 (Ct. App. 1996) (*citing*

5    *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994), *certiorari denied* 115 S.Ct. 203, 513

6    U.S. 875, 130 L.Ed.2d 134); *In re Dunmire v. Dunlap*, 100 Idaho 697, at 700, 604 P. 2d 711, 714

7    (1979) (*citing Wright v. W.H. Carrigg*, 275 F.2d 448 (4th Cir. 1960)).

8        The purpose of the FLSA attorney fees provision is "to insure effective access to the

9    judicial process by providing attorney fees for prevailing plaintiffs with wage and hour

10   grievances." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n,*

11   *Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984).  The

12   mandatory nature of an award of attorney's fees and costs in FLSA actions such as this is consistent

13   with the express purpose of the FLSA which is to rectify and eliminate "labor conditions

14   detrimental to the maintenance of the minimum standard of living" for workers.  *Id.*  Congress'

15   mandate that all successful FLSA plaintiffs are entitled to an award of attorney's fees and costs

16   was intended as an incentive for private litigants to act as "private attorneys general" and vindicate

17   the FLSA rights in the courts.  *Id.; see also Laffey v. Northwest Airlines*, 746 F. 2d 4, 11 (D.C. Cir.

18   1984).

19       In determining the amount of attorney's fees to award in FLSA actions such as this, courts

20   have been instructed not to place an undue emphasis on the amount of the plaintiff's recovery

21   because an award of attorney's fees "encourage[s] the vindication of congressionally identified

22   policies and rights." *United Slate,* at 503.  Consistent with this policy, courts have upheld

23   "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages."

24   *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985); *Flitton v.*

25   *Primary Residential Mortg., Inc.,* 614 F.3d 1173, 1178 (10th Cir.2010) (upholding the district

26   court's decision to award the full amount of fees requested, based on "substantial success," even

27   though the plaintiff obtained only about 1.3% of the damages she had requested); *Bonnette v.*

28

*California Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985) (despite $20,000 recovery for plaintiffs, court awarded $100,000 in attorney's fees); *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1464–65 (9th Cir. 1988), *cert. granted, judgment vacated,* 490 U.S. 1087, 109 S. Ct. 2425, 104 L. Ed. 2d 982 (1989), and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989) (court awarded $152,284 in attorney's fees where jury awarded $150,000 in damages); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013)(the court held it is not unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients).

Consistent with the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), to determine the amount of a reasonable fee in FLSA cases such as this, district courts typically proceed in two steps. First, courts generally "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." *Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). While district courts have discretion to adjust the presumptively reasonable lodestar figure, this circuit "requires a district court to calculate an award of attorney's fees by first calculating the 'lodestar'" before departing from it. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (emphasis added); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).[12] In this Circuit, the Court is required to calculate an award of attorney's fees by *first* utilizing the lodestar. *Caudle v. Bristow Optical Co., Inc.,* 224 F.3d 1014, 1028 (9th Cir. 2000). Thereafter, the Court may adjust the lodestar upward or downward based on 12 factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).

Under the lodestar method, the district court multiplies the number of hours the prevailing

---

[12] The time spent establishing the entitlement to an amount of fees (preparing and defending a motion for attorney's fees) is also compensable. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).

party reasonably expended on the litigation by a reasonable hourly rate.  *Ballen*, 466 F.3d at 746; *Hensley*, at 433.

After calculating the presumptively reasonable fee, the district court may then adjust the lodestar upward or downward based on 12 factors.  *See Hensley*, at 430 n. 3 (*citing Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (Johnson's "list of twelve" thus provides a useful catalog of the many factors considered in assessing the reasonableness of an award of attorney's fees … ." ); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 at 70 (9th Cir. 1975), *cert. denied* 425 U.S. 951, 96 S. Ct. 1726, (1976) (applying *Johnson* factors to FLSA case); *Newhouse v. Roberts Ilima Tours*, 708 F. 2d 436, 441 (9th Cir. 1983) (referring to the *Johnson* factors as *Kerr* factors.).  The twelve facts are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  *Johnson*, 488 F.2d at 717-719.[13]

Before discussing each of these factors, it is important to note that Plaintiff is not requesting an upward adjustment to the lodestar, even though Plaintiff could successfully argue that such an increase is warranted in this case.  Instead, the amount requested is *less* than the lodestar.  Based on this fact and an analysis of the twelve factors, the Court should not make a downward adjustment to Plaintiff's lodestar.

The first factor – the time and labor required – is self-evident.  Through August 31, 2022, Plaintiff's counsel have spent 2,166.10 hours litigating this case for over 3 ½ years.  A principal

---

[13] The 12 factors are also contained in L.R. 54-14(a)(3).

reason for the enormous expenditure of time and money was the contentious nature of this litigation in which virtually every issue was heavily contested. *Ex. 2, Holmes Decl., ¶ 52.*

As to the second factor – the novelty and difficulty of the questions – this case presented an attempt by Defendant to apply the retail and service establishment exemption to the sale of vacation ownership interests. Had Defendant succeeded, FLSA Collective Action Members would not have been entitled to *any* overtime pay whatsoever, let alone additional overtime pay based on Defendant's policy of calculating overtime using the hourly rate only. As class counsel for plaintiffs who sold vacation ownership interests in the *Wyndham* case,[14] Plaintiff's counsel are very knowledgeable and well-versed on this area of the law. *Id., ¶ 53.*

As to the third factor – the skill requisite to perform the legal services properly, given the complexity, difficulty and duration of the case, Plaintiff submits that lawyers lacking the knowledge, experience, staff size and expertise of class counsel would have been ill-equipped to adequately respond to many of Defendant's legal arguments and forced to "throw in the towel." Only counsel like Plaintiff's counsel, who have collectively over 85 years of experience handling complex litigation, particularly FLSA and other wage and hour litigation, could have effectively handled Defendant's vigorous defense of the case. *Id., ¶ 54.*

As to the fourth factor – the preclusion of other employment – Plaintiff's counsel and their staff had to forgo other less risky financial opportunities, and were no longer free to use the time spent on behalf of the class for other less risky pursuits. Plaintiff's counsel are on both sides of the "v," which includes the representation of employers in large collective and class actions. In those instances, counsel are paid by the hour and on a regular basis. *Id., ¶ 55.*

As to the sixth factor – whether the fee is fixed or contingent – Class Counsel took this case on a contingency basis, increasing the risk that, absent an excellent result and solvent Defendant, Class Counsel would not recoup the tremendous investment of time and money necessary to properly represent the class. Unlike defense counsel, Plaintiff's counsel did not get paid a dime during the last 3 ½+ years of this case, and in addition to the delay in getting paid,

---

[14] *Pierce, et al v. Wyndham Vacation Resorts, Inc., et al.*, Case No. 3:13-cv-641 (E.D. Tenn.)



took on sizable risk.  *Id., ¶ 56.*

As to the eighth factor – the amount of time involved and the results obtained – the Settlement speaks for itself.  Not only will FLSA Collective Action Members be guaranteed a 100% recovery for their miscalculation claims, doubled for liquidated damages and for the maximum, three-year recovery period under the FLSA, with the exception for the workweeks that certain FLSA Collective Action Members worked as *salaried* Marketing Supervisors, FLSA Collective Action Members will receive a *premium* totaling an additional **18.44%**.  Based on the foregoing, Plaintiff's counsel obtained a substantial, million-dollar plus recovery on behalf of FLSA Collective Action Members, whose rights were allegedly violated under the FLSA.  *Id., ¶ 57.*

As to the ninth factor – the experience, reputation, and ability of the attorneys – as set forth in the Declaration of Martin Holmes, the experience, reputation, and ability of Plaintiff's counsel in handling FLSA and other class action cases merit an award of their lodestar fees.  The track record of Plaintiff's counsel speaks for itself and demonstrates counsel's vast experience, reputation and excellent abilities to successfully prosecute multiple multi-million dollar wage and hour recoveries over the past twenty 25 years.  *Id., ¶ 58.*

As to the tenth factor – the undesirability of the case – while this case was an excellent case on the merits, such a case would be undesirable to the vast majority of attorneys and law firms due to the time, monetary commitment, and risks involved.  Because of the substantial length of time that may occur before fees or expenses are recovered, if any, taking such a case can and often does have a substantial negative impact on a firm's earnings, and sometimes threatens their very existence.  *Id., ¶ 59.*

While the Court must employ either the lodestar method or the percentage-of-recovery method based on a common fund, the lodestar method is a more accurate way to allocate the Gross Settlement Amount in this case.  As discussed above, if the Court awards Plaintiff's counsel the attorney's fees and costs they request, awards Delara the $20,000.00 Incentive Award he requests, and settlement administrator costs reach the "not to exceed amount" of $19,500.00, the Net

Settlement Amount of **$393,276.54** will not only compensate FLSA Collective Action Members at a rate of 100% for their miscalculation of overtime claims (which includes an equal amount in liquidated damages and the maximum, three-year recovery period under the FLSA), but with the exception for the workweeks that certain FLSA Collective Action Members worked as *salaried* Marketing Supervisors, they will receive a *premium* totaling an additional **18.44% more** than what they could have possibly recovered at trial.

The lodestar figure is calculated by multiplying the number of hours expended on the litigation by a reasonable hourly rate for the region and experience of the lawyer. *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006); *In re Bluetooth*, 654 F.3d at 941.

Class Counsel have kept and maintained contemporaneous records throughout the prosecution of this case detailing the tasks performed and the number of hours worked on each task. *Ex. 2, Holmes Decl., ¶ 40*. Further, Class Counsel have utilized Dickinson Wright's standard billing rates assigned to attorneys and staff based on their experience, which are consistent with the standard billing rates of comparable firms in the community. *Id., ¶¶ 40-42*.

Through August 31, 2022, Class Counsel have spent 2,166.10 hours on this matter, which at their standard billing rates, equals **$1,020,257.00**. *Id.*.[15] Thus, Plaintiff's request for attorney's fees in the amount of **$620,801.50** represents a **39.15%** reduction in Class Counsel's lodestar based on Dickinson Wright's standard billing rates. *Id.*[16] A more detailed account of Class Counsel's attorney's fees, hours and hourly rates are contained in the Declaration of Martin Holmes filed in support of this Motion. *Id., ¶¶ 40-49*.

**B.    Costs**

Prevailing plaintiffs in a FLSA case are entitled to reimbursement for their reasonable costs incurred in the litigation. "Under the FLSA, costs include reasonable out-of-pocket expenses. They can include costs beyond those normally allowed under Fed.R.Civ.P. 54(d) and 28 U.S.C.

---

[15]   Obviously, this amount will increase based on additional work performed by Class Counsel to conclude the settlement process following final approval by the Court.  Class Counsel, however, will not seek additional fees for this work.

[16]   It is well recognized that affidavits of the plaintiff's attorneys and other attorneys in the community regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *Camacho v. Bridgeport Fin., In.*, 523 F.3d 973, 980 (9th Cir. 2008).

DW
DICKINSON WRIGHT
ATTORNEYS AT LAW

§1920." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) (citation omitted); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (holding that FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920); *Colunga v. Young*, 722 F. Supp. 1479, 1488 (W.D. Mich. 1989), aff'd 914 F.2d 255 (6th Cir. 1990) (holding that, while travel and telephone costs are not recoverable under Rule 54 or 28 U.S.C. §1920, they are recoverable under "the remedial and thus more broadly interpreted cost-shifting aspect" of the FLSA).

The costs advanced by Dickinson Wright on Plaintiff's behalf total $125,290.11 through August 31, 2022, which is slightly more than the amount requested in this Motion - $125,059.00. With the exception of $5,164.47 in internal "soft costs," the remainder are "hard costs" involving payments to third parties. With respect to the "hard costs," a large percentage ($94,435.75) has involved payments to CRA, Plaintiff's experts, whose services were invaluable in this case in order to establish liability (*i.e.* Defendant's method of calculating overtime based solely on the hourly rate as opposed to all compensation), as well as calculating damages for the FLSA Collective Class and each individual FLSA Collective Action Member. In addition, $11,800.00 was paid to Plaintiff's expert, Brian Farrington, who rebutted Defendant's retail or service establishment defense. *Ex. 2, Holmes Decl., ¶ 60.*[17]

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court approve: 1) the settlement terms set forth in the parties' Agreement; 2) Plaintiff's request for an Incentive Award in the amount of $20,000.00; 3) Class Counsel's attorney's fees in the amount of $620,801.50; and 4) Plaintiff's costs in the amount of $125,059.00.

---

[17] As with attorney's fees, costs have increased since August 31, 2022, and will also increase following final approval of the Settlement by the Court, including costs associated with CRA calculating the amounts owed to each FLSA Collective Action Member, which will depend on the final Net Settlement Amount. The Settlement also provides for a redistribution of any uncashed checks, including those payable to Class Members who cannot be located, which will require the services of CRA to calculate these additional amounts. *Ex. 2, Holmes Decl., ¶ 61.*



Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ Martin D. Holmes
MICHAEL N. FEDER
Nevada Bar No. 7332
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169

MARTIN D. HOLMES (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012122
PETER F. KLETT (*Admitted Pro Hac Vice*)
Tennessee Bar No. 012688
AUTUMN L. GENTRY (*Admitted Pro Hac Vice*)
Tennessee Bar No. 020766
424 Church Street, Suite 800
Nashville, TN 37219

*Attorneys for Plaintiff and FLSA Collective Action Members*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, I caused a true and accurate copy of the foregoing, PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE FLSA COLLECTIVE ACTION SETTLEMENT AND SUPPORTING MEMORANDUM to be filed with the Clerk of the Court via the Court's CM/ECF system, which sent an electronic copy of same to the following counsel of record for Defendant:

HOWARD E. COLE
JENNIFER K. HOSTETLER
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

ALISON MEGAN HAMER (Admitted Pro Hac Vice)
BENJAMIN JOSEPH TREGER (Admitted Pro Hac Vice)
KIRSTIN ELISABETH MULLER (Admitted Pro Hac Vice)
FERRY EDEN LOPEZ (Admitted Pro Hac Vice)
HIRSCHFELD KRAEMER LLP
233 Wilshire Boulevard, Suite 600
Santa Monica, California  90401

/s/ Martin D. Holmes
Martin D. Holmes

4878-9418-1686v1 [86972-1]



25